UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JARED SIBLEY,

                           Plaintiff,

      v.                                    DECISION AND ORDER
                                              11-CV–1043

JAMESTOWN BOARD OF
PUBLIC UTILITIES, et al

                           Defendants.

## **INTRODUCTION**

Plaintiff Jared Sibley ("Plaintiff" or "Sibley") commenced the instant employment discrimination and civil rights action against his former employer, Jamestown Board of Public Utilities ("Jamestown BPU"), as well as individual defendants David Leathers ("Leathers"), General Manager of Jamestown BPU, David Watkins ("Watkins"), Director of Human Resources for Jamestown BPU, and Chris Rogers ("Rodgers"), Transportation and Distribution Manager for Jamestown BPU.

Plaintiff asserts claims under Title I of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq* ("ADA") and 42 U.S.C. §1983 ("Section 1983"). Plaintiff also brings state law claims for violations of the New York State Human Rights Law and Section 740 of the New York State Labor Law. Defendants have moved

to dismiss Plaintiff's complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, Defendants' motion is granted in its entirety.

## ALLEGED FACTS

Plaintiff was hired by Jamestown BPU on November 4, 2002.[1]  Beginning in January 2008, Rodgers supervised both Plaintiff and Plaintiff's colleague, Mr. Klaes.[2]  Sometime in February 2008, Rodgers held a meeting with Plaintiff, Mr. Klaes and other staff members.  Plaintiff alleges that, during this meeting, he "opposed Mr. Rodgers' treatment of Mr. Klaes over the preceding month." Plaintiff alleges that "upon information and belief that treatment was because of Mr. Klaes's complaints about safety violations and Defendants' discrimination against him on the basis of disability."  Plaintiff provides no further information regarding the nature or details of his complaint.  Plaintiff alleges that after he made these statements, Rodgers became extremely angry at Plaintiff, screamed at both Plaintiff and Mr. Klaes, and ended the meeting by "throwing a chair at Mr.

---

[1]The facts set forth herein reflect the allegations in Plaintiff's amended complaint.  All well-pleaded allegations are accepted as true for purposes of this motion to dismiss, but do not constitute the findings of the Court.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

[2]Plaintiff's amended complaint does not provide information as to his position or job title at Jamestown BPU, nor does it provide any information about Mr. Klaes' position or job title.

Klaes."

Plaintiff alleges that after this meeting, there were "numerous complaints" about "actions taken towards Mr. Klaes and [Plaintiff]" as well as "Defendant's refusal to address safety concerns." Specifically, in November 2009 Plaintiff complained that Mr. Klaes' truck was taken away. Plaintiff also complained that Defendants increased Plaintiff's "on-call time", required him to respond to all automatic text messages sent by Jamestown BPU regardless of whether he was on-call or not, and required him to keep Jamestown BPU informed when he was out of town. Plaintiff alleges that as a result of these requirements he was, in effect, "permanently on-call". Plaintiff received no additional compensation for his on-call time.

In or around the middle of December 2009, Watkins called a meeting with Plaintiff, Mr. Klaes, and all crew chiefs. During this meeting, the crew chiefs were instructed to follow safety instructions.[3] Mr. Classon, the "underground" crew chief, was also in attendance. At that time, Plaintiff and Mr. Klaes complained that Mr. Classon's crew often did not follow safety instructions. Mr. Classon dismissed Plaintiff's comments regarding the importance of safety and safety regulations by stating, "well they're just gonna be dead anyway." Watkins instructed Mr. Classon to "just try and follow the safety rules and do the best you

---

[3] Plaintiff's amended complaint provides no information about the job of "crew chief" and what it entailed or required, or the specific safety regulations he claims were at issue.

3

can." Plaintiff then stated to Watkins, "I didn't know safety was negotiable." Plaintiff alleges that Watkins became angry and excused Mr. Classon from the meeting. Plaintiff states that Watkins proceeded to reprimand Plaintiff and Mr. Klaes for their "witch hunt" against Mr. Classon.

In April of 2010, three employees were injured in an arc flash incident at a Jamestown BPU substation. Plaintiff's amended complaint provides no information as to the cause of this accident, what transpired, or the employees involved. Following this incident, a vendor for Personal Protective Equipment was brought in and crew members were fitted for equipment which would reduce the risk of harm from arc flashes. Plaintiff submitted an order for the protective equipment to the purchasing agent. Plaintiff alleges that "upon information and belief", the purchasing agent took the order to Rodgers, who refused to process the order.

In or around early May of 2010, Plaintiff was transferred from the line department to the plant.[4] On June 30, 2010, Leathers questioned Plaintiff regarding Mr. Klaes' work performance and competency as a supervisor. Plaintiff defended Mr. Klaes and reiterated many of the safety concerns that he had previously voiced. Plaintiff contends that Leathers refused to take any action to remedy these concerns. Plaintiff alleges that he was so "dissuaded" by Leathers'

---

[4] Since Plaintiff provides no information regarding his position at Jamestown BPU, it is unknown as to whether this transfer affected Plaintiff's job duties or responsibilities.

4

response, that he resigned the next day. Plaintiff contends that following his resignation, Jamestown BPU objected to Plaintiff's unemployment insurance application.[5]

In September of 2011, another Jamestown BPU employee suffered a severe injury from an arc flash flood burn. Again, Plaintiff provides no additional information regarding the incident.

## **DISCUSSION**

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 (2d Cir. 2005). A complaint should be dismissed only if it fails to contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. V. Twombly*, 550 U.S. 544 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198

---

[5] Plaintiff's amended complaint also alleges that Jamestown BPU reported to the County Civil Service Commission that Mr. Klaes did not have a bachelor's degree and, as a result, the County Civil Service Commission terminated Mr. Klaes. The amended complaint also alleges that Jamestown BPU "then terminated Mr. Klaes pursuant to a Section 75 hearing."

(2d Cir. 2011).

Here, Plaintiff's causes of action include retaliation in violation of the ADA, the New York State Human Rights Law and Section 740 of the New York State Labor Law, as well as deprivation of constitutional rights pursuant to Section 1983.

1. <u>Retaliation Under the ADA</u>

Title I of the ADA prohibits employment discrimination on the basis of an individual's disability. *See generally* 42 U.S.C. §12101, *et seq*. It also prohibits retaliation against any individual who has "opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in any investigation, proceeding or hearing under the ADA." 42 U.S.C. §12203(a).

The burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 US 792, 802 (1973), and used in claims of employment discrimination, is also applied to discrimination claims brought pursuant to the ADA. *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2d. Cir. 1998). Thus, the Second Circuit has concluded that it is appropriate to apply the framework used in analyzing retaliation claims under Title VII when analyzing a claim of retaliation under the ADA. *Shepard v. New York City Correctional Department and City of New York,* 360 Fed. Appx. 249 (2d Cir. 2009); *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999).

In order to establish a *prima facie* case of retaliation under the ADA, a plaintiff must demonstrate that: (1) the employee engaged in an activity protected by the ADA; (2) the employer was aware of his participation in the protected activity; (3) the employer subjected him to a materially adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. *Shepard,* 360 Fed. Appx. At 250. At the pleading stage, plaintiff "need not establish a *prima facie* case of retaliation, but must nonetheless allege evidence stating a plausible claim of retaliation." *Stewart v. The City of New York*, 2012 U.S. Dist. LEXIS 96998 (SDNY 2012).

With respect to the first element, "protected activity" refers to a broad range of actions taken to protest or oppose discrimination. *Cruz v. Coach Stores, Inc*., 202 F.3d 560, 566 (2d Cir. 2000). A protected activity does not have to "rise to the level of a formal complaint" and includes complaints to management, writing critical letters and expressing support for co-workers. *Sumner v. United States Postal Serv*., 899 F.2d 203, 209 (2d Cir. 1990).

While complaints about conduct clearly prohibited by the ADA need not mention discrimination or use particular language, "ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity." *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch*., LLC, 470 F. Supp. 2d 345, 357 (SDNY 2007). Thus, an employee's general complaint to an employer about unfair treatment in the workplace is

7

insufficient to constitute protected activity. *See Ezekwo v. New York City Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991) ("The onus is on the speaker to clarify to the employer that [he] is complaining of unfair treatment due to [his] membership in a protected class and that [he] is not complaining merely of unfair treatment generally."); *Tolleson v. Unity Health System*, 2012 U.S. Dist. LEXIS 69961 (WDNY 2012) ("[t]o engage in protected activity, the employee must still, at the very least, communicate her belief that discrimination is occurring to the employer, and cannot rely on the employer to infer that discrimination has occurred").

Plaintiff has failed to adequately allege that he engaged in a protected activity and thus his *prima facie* claim of retaliation fails. Plaintiff alleges only that he "opposed Mr. Rodgers' treatment of Mr. Klaes over the preceding month". There is no basis in these conclusory statements from which it may plausibly be inferred that Plaintiff participated in a protected activity. Nowhere in his amended complaint does Plaintiff allege that he specifically complained to any of the Defendants regarding discrimination or harassment of any kind. Allegations that Plaintiff "opposed the treatment" of another employee, without identifying that the treatment was discrimination or harassment based upon protected class or status, fail to make an employer aware of alleged discriminatory conduct. *See Sullivan v. Chappius*, 711 F. Supp. 2d 279 (WDNY 2010) (plaintiff failed to establish that he engaged in a protected activity where "he does not allege that

he complained about any practices that were prohibited [by anti-discrimination laws], that he believed were prohibited, nor has he identified any such practices"); *Foster v. The Humane Society of Rochester and Monroe County, Inc.*, 724 F. Supp. 2d 382 (WDNY 2010) (motion to dismiss plaintiff's retaliation claim was granted where plaintiff wrote a memo complaining of a "hostile work environment" but the incidents identified had nothing to do with unlawful discrimination).

Plaintiff's allegation that "upon information and belief" the treatment in question was due to Mr. Klaes' disability is similarly insufficient. Conclusory allegations in a pleading as to why certain conduct may have occurred fails to establish that, during the time period in question, Plaintiff put his employer on notice that he was complaining about disability discrimination, or that he was supporting another employee's complaints of disability discrimination. Without some type of specific allegation that he complained to his employer about Mr. Klaes' treatment due to his membership in a protected class, Plaintiff simply cannot establish that he engaged in an activity protected by the ADA. *See Rojas v. The Roman Catholic Diocese of Rochester*, 660 F.3d 98 (2d. Cir. 2011); *quoting Galderi-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d. Cir. 1998) (dismissal of retaliation claim upheld where complaints made by plaintiff were generalized and therefore the employer "could not reasonably have understood that plaintiff was complaining of conduct prohibited by Title VII").

Because Plaintiff has not established the first element of a *prima facie* case

9

of retaliation, *i.e.*, that he engaged in a protected activity, this claim fails as a matter of law. The Court grants Defendants' motion to dismiss with respect to Plaintiff's ADA claim.

2. *Section 1983 Claim*

Plaintiff's third, fourth and fifth causes of action assert Section 1983 claims as to individual defendants Leathers, Watkins and Rodgers. Paragraphs 3, 4, and 5 of the amended complaint indicate that Plaintiff is suing these defendants in both their individual and official capacities.

In order to set forth an actionable claim under Section 1983, a plaintiff must assert that a defendant "deprived [him] of a right, privilege, or immunity secured by the Constitution or the laws of the United States." *Gomez v. Toledo*, 446 US 635, 640 (1980). Here, Plaintiff alleges that each individual defendant "deprived [him] of his right to be free of discrimination and retaliation under the First Amendment and Fourteenth Amendment" of the Constitution. However, as explained in detail below, Plaintiff has failed to state a cognizable claim for relief under Section 1983.

The Fourteenth Amendment guarantees "a right to be free from invidious discrimination in statutory classifications and other government activity." *Harris v. McRae*, 448 U.S. 297 (1980). This right is violated when the state distinguishes between individuals on "unreasonable, arbitrary, or capricious differences that are irrelevant to a legitimate government objective." *Lehr v. Robertson*, 463 U.S. 248

(1983).  However, this Circuit does not recognize claims of employment discrimination or retaliation grounded in the Equal Protection Clause of the Fourteenth Amendment.

For example, in *Beate v. Litt*, the Second Circuit dismissed a public employee's Section 1983 claim of retaliation and discrimination premised upon the Equal Protection Clause of the Fourteen Amendment.  79 F.3d 318 (2d. Cir. 1995).  The Court held that "although claims of retaliation are commonly brought under the First Amendment...and may also be brought under Title VII...we know of no court that has recognized a claim under the *equal protection clause* for retaliation following complaints of racial discrimination...[g]iven the availability of Title VII...we see no reason to break constitutional ground in this case."  *Id*. at 322.  *See also DeVito v. Valley Stream Central High School District*, 2011 U.S. Dist. LEXIS 8741 (EDNY 2011) (plaintiff's Section 1983 retaliation claim grounded in the Equal Protection Clause of the Fourteenth Amendment dismissed since "retaliation claims based upon the equal protection clause are not cognizable in this Circuit"); *Worthington v. County of Suffolk*, 2007 U.S. Dist. LEXIS 52793 (EDNY 2007) (retaliating for complaining of gender discrimination is not an equal protection violation); *Lange v. Town of Monroe*, 213 F. Supp. 2d 411, 219 (SDNY 2002) (alleged retaliation in response to plaintiff's sexual harassment complaints is not cognizable as an equal protection claim).

Based upon the allegations in the amended complaint, it appears that

Plaintiff is attempting to argue that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated when he was retaliated against based upon complaints he made on behalf of Mr. Klaes. Plaintiff alleges, upon information and belief, that Mr. Klaes was being adversely treated due to his disability. As set forth in the case law discussed above, this type of equal protection argument is not a cognizable claim in this Circuit and will be dismissed.

In order to prevail on a claim of First Amendment retaliation in violation of Section 1983, a public employee must establish: (1) that they engaged in a constitutionally protected activity; (2) that they suffered an adverse employment action; and (3) that the protected activity was a "motivating factor" in the adverse employment action. *Skehan v. Village of Manaroneck*, 465 F.3d 96, 106 (2d Cir. 2006). With respect to his First Amendment claim, Plaintiff seems to allege that his November 2009 and June 2010 complaints about safety violations were protected under the First Amendment, and that the individual defendants subjected him to adverse employment actions as a result of these complaints.

Importantly, qualified immunity provides government officials "immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Government officials who are "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982).  The Second Circuit has held that in determining whether a defendant is entitled to qualified immunity as to a plaintiff's First Amendment claims, the court "must first determine whether the plaintiff's constitutional right to free speech was impinged."  *Looney v. Black*, 702 F.3d 701, 710 (2d Cir. 2012).  Here, Jamestown BPU argues that because Plaintiff's speech was related to his job duties rather than a matter of public concern, it is not constitutionally protected speech sufficient to state a claim under Section 1983.  The Court agrees.

In determining whether the speech at issue is constitutionally protected, a court is to consider: (1) whether the subject of the employee's speech was a matter of public concern; and (2) whether the employee spoke "as a citizen" rather than solely as an employee.  *Gercetti v. Ceballos*, 547 U.S. 410, 420-22, 424 (1951) 420-22, 424.  In order to constitute speech on a matter of public concern, an employee's expression must be relating to any matter of "political, social or other concern to the community", rather than concerns or complaints related to the speaker's own personal situation.  *Connick v. Myers*, 461 U.S. 138, 143 (1983).

In *Garcetti*, the Supreme Court explained that:  "[a]ctivities required of the employee as part of [his] employment duties are not performed as a citizen if they are not the kind of activity engaged in by citizens who do not work for the government."  547 U.S. at 423.  Similarly, the Second Circuit has concluded that

13

an employee speaks "pursuant to" their duties, and therefore without First Amendment protection, when his conduct is "part and parcel of his concerns about his ability to properly execute his duties." *Weintraub v. Bd. Of Educ.*, 593 F.3d 196, 203 (2d Cir. 2010). Topics that are "indispensable prerequisites" to effective performance of the speaker's "primary employment responsibility" are not entitled to First Amendment protection. *Id*. Most significantly, public employees speaking pursuant to their "official duties" are not afforded First Amendment protection and "this is the case even when the subject of an employee's speech is a matter of public concern." *Ross v. Breslin*, 693 F.3d 300, 305 (2d. Cir. 2012).

In *Looney v. Black*, the Second Circuit reversed a district court's denial of a defendant's motion to dismiss a First Amendment retaliation claim under Section 1983, since the plaintiff had not adequately alleged that he spoke as a private citizen. 702 F.3d at 712. The plaintiff, who was employed by defendants as a building official, suffered a reduction in his employment status after he communicated with a town resident regarding "wood burning boiler/stove and smoke discharge as public health concerns." *Id*. The Second Circuit concluded that based upon the allegations in plaintiff's complaint, the alleged speech was "closely related to his work as [b]uilding [o]fficial" and the "only sensible way to interpret [plaintff's] allegations is that he spoke on these issues because he was in an official position that required, or at least allowed, him to do so." *Id*. The

14

Second Circuit concluded that the district court erred in holding that the defendants were not entitled to qualified immunity with respect to the First Amendment claim, since plaintiff's statements "owed their existence to his position as the [b]uilding [o]fficial." *Id*. *See also Massaro v. New York City Department of Education*, 481 Fed. Appx. 653 (2d Cir. 2012) (upholding the district court's finding that teacher's statements regarding unsanitary conditions in her classroom were made pursuant to her duties as a public school teacher, because they were aimed at her health and ensuring a safe and clean working environment).

Here, Plaintiff alleges that in December 2009 he attended a work meeting with defendant Watkins and other employees, during which time safety regulations and procedures were discussed. At that meeting, Plaintiff complained regarding a co-worker's failure to follow certain safety regulations. Months later Plaintiff apparently reiterated these same concerns to defendant Leathers, the General Manager of Jamestown BPU. Plaintiff also alleges that he submitted an order for personal protective equipment, which defendant Rogers failed to approve. These allegations are insufficient to establish that Plaintff engaged in protected speech. His safety complaints were clearly related to the performance of his job, since they were voiced at a work meeting with his co-workers where safety was being discussed. Furthermore, not only does Plaintiff's ordering of protective gear not constitute "speech", but it was clearly job related. Plaintiff's

15

complaints all appear to address job-related safety issues. Plaintiff offers no allegations indicating to this Court that he was speaking as a citizen, rather than an employee who was concerned about his working conditions and the safety of himself and his co-workers while on the job. Construing the allegations in the amended complaint in a light most favorable to Plaintff, it is clear that, like the plaintiff in *Looney*, Plaintiff's speech "owed its existence" to his position at Jamestown BPU.

Since Plaintiff has not adequately alleged that he engaged in constitutionally protected speech, defendants Leathers, Watkins and Rodgers are entitled to qualified immunity as to Plaintiff's First Amendment claim. The Court grants Defendants' motion to dismiss the Section 1983 claims in their entirety.

    3.    *Section 740 of the New York State Labor Law*

Plaintiff alleges that Jamestown BPU engaged in a retaliatory personnel action in violation of Section 740 of the New York State Labor Law. Specifically, Plaintiff alleges that he was retaliated against because he reported safety violations.

Section 740 of the New York State Labor Law, also known as the "Whistleblower Statute", prohibits an employer from taking "any retaliatory personnel action against an employee" for, *inter alia*, "disclosing to a supervisor or public body an illegal activity that constitutes a danger to the public health or safety, testifying to an investigating public body, or objecting to an illegal policy or

practice." N.Y. Lab. Law §740(2). However, Section 740 of the New York State Labor Law does not apply to public employers. *Dibiase v. Barber*, 2008 WL 4455601, *5 (EDNY 2008); *Tamayo v. City of New York*, 2004 WL 137198, *7 (SDNY 2004) (dismissing retaliation claim brought by city police detectives under Labor Law Section 740); *Markovic v. New York City Sch. Constr. Auth.*, 2002 U.S. Dist. LEXIS 241, at *12 (SDNY 2002) (Section 740 does not apply to public employers); *Balduzzi v. City of Syracuse*, 1997 U.S. Dist. LEXIS 1317, at *11 (NDNY 1997) ("Labor Law §740 pertains only to employees in the private sector and...its public employee counterpart is New York Civil Service Law §75-b.")

It is undisputed that Plaintiff, an employee of Jamestown BPU, is a public employee. Section 740 of the New York Labor Law does not apply to public employees such as Plaintiff. Thus, this cause of action will be dismissed.

### 4. *New York State Executive Law*

Plaintiff also asserts that Defendants retaliated against him for opposing discrimination in violation of Section 296 of the New York State Executive Law.[6] Section 297 of the Executive Law, commonly known as the "election of remedies" provision, requires a plaintiff to pursue his claim for relief under Section 296 in either a judicial forum or a "local commission on human rights", but not both. *See* N.Y. Executive Law §297(9); *DeWald v. Amsterdam Housing Authority*, 823 F.

---

[6] Plaintiff refers to this cause of action as arising under the New York State Human Rights Law. Article 15 of the New York State Executive Law, in which Section 296 appears, is also known as the Human Rights Law.

Supp. 94 (NDNY 1993). The only exception to this rule occurs when the local commission on human rights has dismissed the claim "for administrative convenience." *Id*. Thus, a "federal court may not adjudicate a claim of unlawful discriminatory practice under [S]ection 296 which has already been filed with the state [Division of Human Rights or "DHR"] unless the DHR dismissed the claim for administrative convenience." *Id*.; *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 256-57 (2d Cir. 1991) (federal courts exercising ancillary jurisdiction over a Section 296 claim must strictly adhere to the "election of remedies" scheme).

Plaintiff alleges that he filed a charge of discrimination with the New York State DHR on March 17, 2011. There are no allegations that the DHR dismissed this complaint for administrative convenience. Thus, Plaintiff has elected his remedies and is now barred from asserting this claim before this Court. Thus, Plaintiff's cause of action under Section 296 of the New York State Executive Law will be dismissed.

Finally, even if Plaintiff's state law retaliation claim was not barred by the election of remedies provision of the Executive Law, this Court, having dismissed all of Plaintiff's federal claims, would decline to exercise supplemental jurisdiction over the remaining state claims. *See* 28 U.S.C. §1367(c)(3) (permitting a district court to decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction"); *Parisi v. The Coca-*

*Cola Bottling Company of New York*, 1999 U.S. App. LEXIS 22311 (2d Cir. 1999) ("The federal claims having been dismissed, it was within the district court's discretion to decline to exercise supplemental jurisdiction over [plaintiff's] state law claims."); *Peone v. County of Ontario*, 2013 U.S. Dist. LEXIS 27698 (WDNY 2013) (declining to exercise supplemental jurisdiction over state law claims after plaintiff's Title VII, Section 1983, and Section 1981 claims were dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)).

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted in its entirety. The Clerk of the Court is directed to close the case.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: March 29, 2013